J-A28022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARRYL WILLIAMS | |
| Appellant | No. 3261 EDA 2013 |

Appeal from the Judgment of Sentence of September 16, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0007305-2012

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                    **FILED JANUARY 16, 2015**

Darryl Williams appeals his September 16, 2013 judgment of sentence.  On the merits of Williams' claims, we adopt the trial court's comprehensive opinion as our own, and deny relief upon Williams' stated bases.  Nonetheless, because the mandatory minimum sentence that was imposed upon Williams was illegal, we vacate the judgment of sentence, and remand for resentencing.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court summarized the pertinent factual and procedural history of this case as follows:

> On September 26, 2012, Trooper Timothy Greene was driving a State Police vehicle in a westerly direction on 9th Street approaching Upland Street in Chester, Pennsylvania.  He observed a blue Chevrolet Impala with dark tinted windows driving slowly.  Believing that the tinted windows violated 75

Pa.C.S. § 4524(e)(1),[1] he activated his overhead lights and signaled the driver to stop.

After the Impala stopped, Trooper Greene got out, approached the driver's side and asked that the driver, later identified as [] Darry Williams, produce his license and registration. Greene returned to the police vehicle, made inquiries from the computer system and learned of a warrant from Williams' arrest for charges of terroristic threats and retaliation against a witness or victim. Greene returned to the Impala and arrested [Williams].

Greene then asked that the passenger, later identified as Derek Richardson, step outside of the car. Richardson alerted Greene to the presence of a gun in the car. Greene looked inside and saw a gun on the passenger side floor and glassine bags in the center console, both in plain view. The gun was seized and was later found to be operable. However, it had no usable fingerprints.

Trooper Joseph Yingling arrived at the scene and transported [Williams] to the State Police barracks, where a search of his person revealed 15 bags of a substance, later identified as crack cocaine, in his right sock. Richardson was also taken to the barracks, where he denied ownership of the gun. Both men were charged with various offenses. Richardson pled guilty to conspiracy to possess a firearm in exchange for testimony against Williams.

The matter proceeded to trial before [] a jury, which found [Williams] guilty of [possession with intent to deliver, possession of a controlled substance, possession of drug paraphernalia, persons not to possess a firearm, and carrying a concealed firearm without a license.[2]] On September 16, 2013, [the trial court] sentenced [Williams] to an aggregate term of

_____

[1] Section 4524(e)(1), entitled , provides that "[n]o person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S. § 4524(e)(1).

[2] 35 P.S. §§ 780-113(a)(30), (16), and (32); 18 Pa.C.S. §§ 6105, and 6106, respectively.

incarceration of 168 to 336 months. On September 23, 2013, [Williams] filed a Motion for a New Trial and/or an Arrest of Judgment, which [the trial court] denied on October 23, 2013. [Williams] filed a Notice of Appeal and, in his Statement of Matters Complained of on Appeal, asserted various errors.

Trial Court Opinion ("T.C.O."), 2/21/2014, at 1-2 (citations to notes of testimony omitted). On February 21, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Williams presents the following five issues for our consideration:

Did not the trial court err in denying [Williams'] motion to suppress evidence because the search of [Williams], his vehicle and other areas was illegal as effectuated without probable cause and the evidence seized and introduced at the hearing and trial [was] the fruit of the wrongful [] seizure, all in violation of the Fourth and Fourteenth Amendments [to] the U.S. Constitution and Article I Section 8 of the Pennsylvania Constitution?

Did not the trial court err in precluding [Williams] from presenting evidence of his co-defendant's prior criminal record for possession with intent to deliver controlled substances?

Did not the court abuse its discretion in sentencing [Williams] to an unreasonable and excessive term in light of the circumstances of the case, most significantly the consecutive sentences for several overlapping gun charges, its failure to set forth its reasons for the sentence imposed as required, and the court's apparent vindictiveness towards [Williams] for exercising is right to a jury trial?

Did not the court err in permitting the testimony of the Commonwealth's expert witness to exceed the appropriate scope of such testimony pursuant to Pa.R.E. 704, as he improperly testified on the ultimate issue that [Williams] was not a drug user but was guilty of being a drug dealer while in possession of a firearm?

Did not the lower court err in finding [Williams] guilty 1) possession with intent to deliver while in possession of a firearm; 2) [persons not to possess a firearm] and 3) [carrying a

- 3 -

concealed firearm without a license] as the evidence was insufficient of a matter of law to establish these charges and/or was so against the weight of the evidence to warrant a new trial?

Brief for Williams at 5.

In its Rule 1925(a) opinion, the trial court thoroughly addressed each of Williams' claims. Ultimately, the court concluded either that Williams had waived certain issues[3] or that the non-waived issues had no merit. We have reviewed the record, the parties' respective briefs, and the arguments and citations to pertinent authorities raised by the parties. Moreover, we have reviewed the cases and statutes cited by the trial court, and have performed an independent consideration of the applicable law. Having done so, we conclude that the trial court has correctly and comprehensively addressed Williams claims. We agree with the trial court that Williams is not entitled to relief on those claims. Because we have nothing substantive to add to the trial court's discussion, we adopt the trial court's analysis of Williams' claims as our own. A copy of the trial court's opinion is attached hereto for convenience.

---

[3] We differ with the trial court on only one point. In its opinion, the trial court sets forth the general standards applicable to a weight of the evidence claim, and ultimately concludes that "[t]here were no facts that were so clearly of greater weight that to ignore them or to give them equal weight with all the facts would be a denial of justice." T.C.O. at 17-18. Unlike the trial court, we express no opinion on the merits of Williams' weight of the evidence claim. Rather, we conclude that the claim is waived because Williams did not raise it in the first instance in his post-sentence motion. *See Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012).

However, our independent review of the record has revealed an issue pertaining to the legality of Williams' sentence. Although Williams has not raised a specific challenge to the legality of his sentence, such a challenge "can be raised *sua sponte* by this Court," **Commonwealth v. Edrington**, 780 A.2d 721, 723 (Pa. Super. 2001), and cannot be waived by an appellant. **Commonwealth v. Archer**, 722 A.2d 203, 209 (Pa. Super. 1998).

For his conviction for possession of a controlled substance with intent to deliver, Williams was sentenced to five to ten years' imprisonment pursuant to the mandatory minimum sentencing provision set forth at 42 Pa.C.S. § 9712.1. Subsection (a) of section 9712.1 provides, in pertinent part, as follows:

> Any person who is convicted of a violation of [35 P.S. § 780-113(a)(30) of] the Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

42 Pa.C.S. § 9712.1(a). However, in **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014), this Court held that section 9712.1 was unconstitutional in light of the United States Supreme Court's decision in **Alleyne v. United States**, 133 S.Ct. 2151 (2013), because the statute requires the facts that trigger the application of the mandatory sentence be

found by a judge, and not a jury, in violation of the Sixth Amendment to the United States Constitution. **Newman**, 99 A.3d at 98, 103. Consequently, the application of the mandatory sentence in this case likewise was unconstitutional, and Williams must be resentenced without regard to section 9712.1. **Id.** at 103.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/16/2015

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
                               )
                               )
           vs.                 )
                               )    No. CP-23-CR-7305-2012
DARRYL WILLIAMS                )
                               )    Superior Court Docket 3261 EDA 2013
                               )

## OPINION

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On September 26, 2012, Trooper Timothy Greene was driving a State Police vehicle in a westerly direction on 9th Street approaching Upland Street in Chester, Pennsylvania. He observed a blue Chevrolet Impala with dark tinted windows driving slowly. Believing that the tinted windows violated 75 Pa.C.S. § 4524(e)(1), he activated his overhead lights and signaled for the driver to stop.

After the Impala stopped, Trooper Greene got out, approached the driver's side and asked that the driver, later identified as defendant, Darryl Williams, produce his license and registration. Greene returned to the police vehicle, made inquiries from the computer system and learned of a warrant for Williams' arrest for charges of terroristic threats and retaliation against a witness or victim. [N.T. 3/27/13, p. 28-31] Greene returned to the Impala and arrested defendant.

Greene then asked that the passenger, later identified as Dereck Richardson, step outside of the car. [N.T. 3/27/13, p. 32] Richardson alerted Greene to the presence of a gun in the car. Greene looked inside and saw a gun on the passenger side floor and glassine bags in the center console, both in plain view. [Id. at 32-34; See also N.T. 6/17/13, p. 52] The gun was seized and

1

was later found to be operable. [N.T. 6/17/13, p. 68] However, it had no usable fingerprints. [*Id.* at 79, 101]

Trooper Joseph Yingling arrived at the scene and transported defendant to the State Police barracks, where a search of his person revealed 15 bags of a substance, later identified as crack cocaine, in his right sock. [N.T. 3/27/13, p. 49] Richardson was also taken to the barracks, where he denied ownership of the gun. [N.T. 6/17/13, p. 60] Both men were charged with various offenses. Richardson pled guilty to conspiracy to possess a firearm in exchange for testimony against Williams. [*Id.* at 122-125]

The matter proceeded to a trial before this Court and a jury, which found defendant guilty of all charges. On September 16, 2013, this Court sentenced defendant to an aggregate term of incarceration of 168 to 336 months. On September 23, 2013, defendant filed a Motion for a New Trial and/or an Arrest of Judgment, which this Court denied on October 23, 2013. Defendant filed a Notice of Appeal and, in his Statement of Matters Complained of on Appeal, asserted various errors.

## DISCUSSION

### I.  The suppression motion was properly denied.

The Superior Court should affirm the denial of the suppression motion because Trooper Greene properly stopped defendant's vehicle, arrested him on an outstanding warrant and seized a gun and drugs found in the car. In his Omnibus Pretrial Motions, defense counsel asserted that: the search/seizure of Williams was illegal and unconstitutional, [Omnibus Pretrial Motion, ¶ 26] Trooper Greene did not have cause to stop the Impala, [Id., 27] Williams should have been released after providing valid operating information, [Id., ¶ 28] the search was not a "custodial inventory search." [Id., ¶ 29] and the stop and seizure violated defendant's rights under the United States and Pennsylvania Constitutions. [Id., ¶ 30] These assertions lack merit.

Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h). See Commonwealth v. Iannaccio, 505 Pa. 414, 480 A.2d 966 (1984), cert. denied, 474 U.S. 830 (1985).

It is well established that a forcible stop of a motor vehicle by the police constitutes a seizure triggering the constitutional protections of the Fourth Amendment. Commonwealth v. Clinton, 905 A.2d 1026, 1030 (Pa.Super. 2006) citing Commonwealth v. Campbell, 862 A.2d 659, 663 (Pa.Super. 2004). See Commonwealth v. Knotts, 663 A.2d 216, 218 (Pa.Super. 1993) ("When police stop a vehicle in this Commonwealth for investigatory purposes, the vehicle, and its occupants, are considered seized and the seizure is subject to constitutional constraints."). Therefore, the decision to stop defendant's Impala constituted a seizure. This Court must evaluate the lawfulness of that seizure and determine whether the Trooper had either probable cause or reasonable suspicion to initiate it.

3

"Probable cause exists if the facts and circumstances within the knowledge of the police at the time of the stop are sufficient to justify a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999) (quoting *Commonwealth v. Gibson*, 638 A.2d 203, 206 (Pa. 1994)); see *Commonwealth v. Oppel*, 754 A.2d 711, 713 (Pa. Super. 2000).

Police can initiate an investigatory stop when they have reasonable suspicion of a Vehicle Code violation. *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008); *Commonwealth v. Muhammed*, 992 A.2d 897, 900 (Pa.Super. 2010). The constitution does not prevent the police from "stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if it is a minor offense." *Chase*, 960 A.2d at 113. "Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer. . . A finding of reasonable suspicion does not demand a meticulously accurate appraisal of the facts. Indeed, even stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable." *Id.* (internal citations and quotation marks omitted). "Further, where an officer observes a Motor Vehicle Code equipment violation from a vantage point at which he is entitled to be and subsequently conducts a traffic stop, the Fourth Amendment is not violated." *Commonwealth v. Steinmetz*, 656 A.2d 527, 528-29 (Pa. Super. 1995) (citation omitted). A police officer need not stop the vehicle only when he or she intends to issue a citation; he may effectuate a stop solely to issue a warning. *Commonwealth v. Benton*, 655 A.2d 1030, 1033 (Pa. Super. 1995) (citing *Commonwealth v. Fisher*, 294 Pa. Super. 486, 440 A.2d 570, 572 (Pa. Super. 1982)).

A police officer who observes a vehicle with excessive tinting on its windows is permitted to effectuate a traffic stop because such tinting constitutes a violation of 75 Pa.C.S. §

4

4524(e)(1)[1]. *Commonwealth v. Kemp*, 961 A.2d 1247, 1250 (Pa. Super. 2008). See also: *Commonwealth v. Dales*, 820 A.2d 807 (Pa. Super. 2003). Moreover, a technical violation of the Motor Vehicle Code legitimizes a stop, even if it is a pretext for some other investigation. *Commonwealth v. Jiggetts*, 15 Pa. D. & C. 5th 225 (Com. Pl. Lehigh 2010) (citing *Arkansas v. Sullivan*, 532 U.S. 769, 772, (2001); *Whren v. United States*, 517 U.S. 806, 812-13 (1996); *United States v. Robinson*, 414 U.S. 218 (1973); *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006)). The subjective motivations of the officers, "play no role in ordinary probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813; *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) ("[I]f police can articulate a reasonable suspicion of a Vehicle Code violation, a constitutional inquiry into officer's motive for stopping vehicle is unnecessary."). This Court holds that Trooper Greene did, in fact, reasonably suspect that Williams was driving the vehicle in violation of 75 Pa.C.S. § 4524(e)(1).

After stopping defendant's vehicle, Trooper Greene asked for his driver's license. Greene was permitted to do under Section 6308 of the Vehicle Code, which provides:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, **for the purpose of checking** the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the **driver's license**, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b) (emphasis added). Greene then "ran" the license through "CLEAN NCIC" and found that there was an outstanding warrant for defendant's arrest. [N.T. 3/27/13, p. 28-31]

---

[1] That subsection provides:

    (e) SUN SCREENING AND OTHER MATERIALS PROHIBITED.--

    (1) No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.

After learning of the outstanding warrant, Greene was certainly at liberty to arrest the defendant. Defense counsel advances the curious argument that Williams should have been released without further search after providing valid operating information. [Omnibus Pretrial Motion, ¶ 28] Any suggestion that the Trooper should have released a man with an outstanding warrant for his arrest is untenable.

During the ensuing investigation, Trooper Greene asked that the passenger step outside of the car. [N.T. 3/27/13, p. 32] Police may request that both drivers and passengers "alight" from a lawfully stopped car without reasonable suspicion that criminal activity is afoot. *Commonwealth v. Pratt*, 930 A.2d 561, 564 (Pa.Super. 2007). Trooper Greene testified that the passenger advised him of the presence of a gun in the car. Greene looked inside and saw a gun and drug paraphernalia in plain view. [*Id.* at 32-34]

Even if looking inside a car window were to be considered a "search," it would have nevertheless been reasonable. The law is clear that no expectation of privacy exists with respect to an item that is in plain view in a vehicle. *Commonwealth v. Clark*, 802 A.2d 658, 660 (Pa.Super. 2002). The plain view exception to the warrant requirement contains three prongs: (1) the police must be at a lawful vantage point; (2) the incriminating character of the object must be immediately apparent; and (3) the police must have a lawful right of access to the object. *Commonwealth v. McCree*, 924 A.2d 621, 625 (Pa. 2007).

The incriminating character of a gun in the possession of a man with an outstanding arrest warrant for terroristic threats and retaliation against a witness or victim is obvious. Although counsel may argue that the incriminating character of plastic baggies was not "immediately apparent," the law provides that although a particular type of container may have lawful purposes, the circumstances under which a trained narcotics detective views their use may

6

be tantamount to a view of actual contraband. *Commonwealth v. Burnside*, 625 A.2d 678, 681

(Pa. Super. 1993). In *Commonwealth v. Mallory*, 614 A.2d 1174 (Pa. Super. 1992), the court held

that the veteran officer, having been involved with more than a hundred criminal instances of

narcotics in plastic bags, was justified in thinking that the object he saw contained drugs. See

also: *Commonwealth v. Chamberlain*, 480 A.2d 1209 (Pa. Super. 1984) (holding that envelopes

were recognizable as a common drug-packaging device). In the case at bar, defense counsel

stipulated that Greene was qualified to know what drug paraphernalia—specifically glassine

baggies—look like. [*Id.* at 33] Greene was, therefore, at liberty to seize the baggies.

Even if Greene was not, he was certainly authorized to impound the vehicle and have it

towed. His authority to do so is found in 75 Pa.C.S. § 3352(c), which provides:

§ 3352. Removal of vehicle by or at direction of police.

(c) Removal to garage or place of safety. --Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:

. . .

(2) The person or persons in charge of the vehicle are physically unable to provide for the custody or removal of the vehicle.

(3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.

75 Pa.C.S. § 3352.

The state police were at liberty to impound the car under subsection (c)(3) because

defendant, the driver, was arrested on a warrant. See: *Commonwealth v. Bailey*, 986 A.2d 860

(Pa. Super. 2009) (holding that because the police arrested the driver on an outstanding arrest

warrant, they were at liberty to impound his care and conduct an inventory search). They could

7

have impounded the car under subsection (c)(2) because neither defendant nor the passenger, who was also arrested, could have driven it away. See: *Commonwealth v. Martinson*, 533 A.2d 750, 754 (Pa. Super. 1987); *United States v. Smith*, 2005 U.S. Dist. LEXIS 25011 (E.D. Pa. Oct. 24, 2005)

Since the state police had lawfully impounded the vehicle, they were permitted to conduct an inventory search[2]. Trooper Greene testified that the State Police has an inventory policy that provides that they search any vehicle they intend to tow for valuables. [*Id.* at 34] His testimony is sufficient to establish that the inventory search was conducted pursuant to standard police procedure and in good faith. *Commonwealth v. Gatlos*, 76 A.3d 44, 59-60 (Pa. Super. 2013). Therefore, the search of the interior of the vehicle and seizure of the gun and baggies were permissible under the "inventory search" exception to the warrant requirement of the Fourth Amendment.

Defense counsel asserted that the search was not a "custodial inventory search" pursuant to legitimate procedures. [Omnibus Pretrial Motion, ¶ 29] This Court holds that it was, and it credits Trooper Greene's testimony in that regard. Even if it was not, the gun and drugs would have been inevitably discovered at a later date. With regard to the inevitable discovery rule, under Pennsylvania law, "[i]f the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct." See

---

[2] "Four goals underlie such searches. First, they protect the defendant's property while he is in custody; second, police are protected against theft claims when defendants are given their property upon release; third, they serve to protect the police from physical harm due to hidden weapons; and fourth, when necessary they ascertain or verify the identity of the defendant. Intrusions into impounded vehicles or personal effects taken as part of the booking process are reasonable where the purpose is to identify and protect the seized items." *Commonwealth v. Nance*, 571 A.2d 1389, 1391 (Pa. 1990)

8

*Commonwealth v. Bailey, supra.,* 986 A.2d at 862 (Pa. Super. 2009), quoting *Commonwealth v. Gonzalez,* 979 A.2d 879, 890 (Pa. Super. 2009).

The Trooper lawfully searched the car and seized the gun and baggies. It is, therefore, recommended that the denial of the suppression motion be upheld.

## II.    The cross-examination of Dereck Richardson was properly limited.

The Superior Court should reject defendant's argument that his cross-examination of Dereck Richardson was improperly limited. At the beginning of trial, defense counsel announced that his defense was that Richardson, the passenger, sold drugs to the defendant. Therefore, he should be permitted to introduce the drug dealing convictions to prove that Richardson was, in fact, a drug dealer. [N.T. 7/17/13, p. 11] This Court ruled that defense counsel could ask Richardson whether he was a drug dealer, but counsel would have to be content with any answer. [*Id.* at 19]

During his cross-examination, defense counsel never asked whether Richardson was a drug dealer or made any attempt to show that he sold defendant drugs. In fact, as the District Attorney noted, he never even made mention of Richardson's *crimen falsi* convictions. [N.T. 7/19/13, pp. 15, 17] It is clear that defense counsel abandoned his theory that defendant was a hapless victim of a drug dealer who shamelessly preyed upon an unfortunate addict. Counsel has, therefore, waived his argument that his cross-examination was unduly limited.

Even if he did not waive the argument, it is without merit. Pa.R.Evid. 609(a) provides that for the "purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, shall be admitted if it involved dishonesty or false statement." A determination as to whether an offense is a *crimen falsi* may not be based solely upon its statutory title as that "does not place it in proper perspective in

9

terms of meaningfulness and as an aid to the trier of fact." *Commonwealth v. Williams*, 573 A.2d 536, 540 (1990) (Zappala concurring). Even if the definition itself does not include a *crimen falsi* element, an offense may still be considered for purposes of impeachment under Pa. R.E. 609 if the facts of its commission render it such in a particular case. *Commonwealth v. Cascardo*, 981 A.2d 245, 255 (Pa. Super. 2009); *Commonwealth v. Coleman*, 664 A.2d 1381, 1383-84 (Pa. Super. 1995); *Commonwealth v. Harris*, 658 A.2d 811 (Pa. Super. 1995).

Convictions for possession or sale of drugs are generally not *crimen falsi*. *Commonwealth v. Causey*, 833 A.2d 165, 169 (Pa. Super. 2003); *Commonwealth v. Coleman, supra,* 664 A.2d at 1385 (Pa. Super. 1995); *Commonwealth v. Rhodes*, 592 A.2d 1360, 1362 (Pa. Super. 1991). Convictions for drug possession are not *crimen falsi*. See *Commonwealth v. Hernandez*, 862 A.2d 647 (Pa. Super. 2004). Counsel made no attempt to show that Richardson's convictions for sale of controlled substances could be considered *crimen falsi*. Therefore, his argument—even if not waived—has no merit.

The Superior Court should reject this argument.

**III.    Defense counsel waived his arguments that Corporal Skahill's testimony exceeded the scope of his expertise and was "speculative."**

In his Statement of Matters Complained of on Appeal, defense counsel asserts that this Court erroneously permitted the Commonwealth's expert witness, Michael Skahill, to "exceed[] the appropriate scope of expert testimony pursuant to Pa.R.E. 704" and to "offer[] his speculative opinion that defendant was guilty and a drug dealer." [Statement of Matters Complained of on Appeal, ¶ 2] The central difficulty with defendant's assignment of error is that he waived any

10

arguments that Skahill exceeded the scope of his expertise and offered "speculative" opinions by failing to raise them at trial.

Counsel stipulated that Corporal Skahill was qualified to testify as an expert in drug investigations and drug activity. [N.T. 7/18/13, p. 19] Counsel objected early in Skahill's testimony to the question "what happens when your answer is not possession with intent?" [Id. at 27-28] This Court overruled that objection. After some additional questioning, the prosecutor asked Skahill whether he was "able to render an opinion of whether the 15 bags of crack cocaine seized off the Defendant's person in this case were possessed for personal use or possessed with intent to deliver to another person?" [Id. at 33] Corporal Skahill testified that defendant possessed the cocaine with the intent to deliver it. [Id.] Defense counsel did not object either to the question or to the answer. Furthermore, he made no objection to any question or answer in the balance of the direct examination. [Id. at 33-46] In fact, he agreed that this Court has been "very, very fair." [Id. at 103]

On re-redirect examination, counsel did object to Skahill's comments about "what Defense Counsel would like to suggest . . ." [Id. at 139] He asserted that they "went way beyond giving an expert opinion," arguing that the witness overstepped his expertise by making a "reference to" him and "interject[ing] personality" into the case. [Id. at 142 -146] This Court denied defendant's mistrial motion and instructed the jury that Corporal Skahill's remarks "should not be interpreted as any kind of an adverse comment about Mr. Johnson," defendant's counsel. [Id. at 150]

Counsel never argued that Corporal Skahill lacked the expertise to offer an opinion as to whether defendant possessed the 15 bags of crack cocaine with the intent to deliver them. He never asserted that such an opinion would be "speculative." Rather, he merely objected to a

11

personal comment, arguing that this retort "interject[ed] personality" into the case. To the extent that the witness cast an aspersion upon defense counsel, this Court properly dealt with it by giving the jury an appropriate instruction. To the extent that counsel now contends that Skahill's entire testimony was speculative, beyond his expertise or otherwise improper, he waived the arguments by failing to raise them at trial.

The Superior Court should, therefore, reject these arguments.

## IV. This Court did not err by failing to dismiss the gun charges at trial

The Superior Court should reject defendant's third assignment of error because defendant did not request a dismissal of the gun charge at trial. Furthermore, defendant cannot claim the benefit of a bargain he never made.

His counsel asserts the following:

> 3. The trial court erred in failing to dismiss prior to trial the information(s) filed charging defendant with 18 PaCSA 6105 and 6106 as these charges were intended to be withdrawn by agreement of the parties at defendant's preliminary hearing.

[Statement of Matters Complained of on Appeal, ¶ 3] Although counsel raised this argument in the Omnibus Pretrial motion, he abandoned it long before trial. Furthermore, it lacks any merit.

At the Preliminary Hearing held on October 23, 2012, the Commonwealth withdrew the charge of 18 Pa.C.S. § 6106(a)(1), possessing a firearm without a license, contingent upon a "non-trial disposition at the Court of Common Pleas." [N.T. 10/23/12, p. 3] However, the parties were not able to negotiate a plea agreement. On February 28, 2013, defense counsel filed an Omnibus Pretrial Motion in which he detailed a breakdown in negotiations between the parties. He asked that the new gun charge under 18 Pa.C.S. § 6105 be dismissed because it constituted "vindictive prosecution" and because it violated Pa.R.Crim.P. 565.

12

At the hearing held on March 27, 2013, counsel did not advance his dismissal motion. Rather, he and the Assistant District Attorney discussed the possibility of a plea. The negotiations broke down, and the case proceeded to trial. Now, after the defendant has been sentenced, defense counsel renews his motion to dismiss.

Counsel has waived the issue by failing to advance it at any point during trial. In addition, the argument is without merit. It is apparent that the defendant and the Commonwealth were unable to negotiate a deal that was satisfactory to all. This Court has no authority to impose a resolution. The Commonwealth offered to withdraw the gun charges, but its offer was "contingent" on a "non-trial disposition." The parties could not agree on a disposition, so the Commonwealth withdrew its offer and proceeded to trial. Defendant has no right to claim the benefit of a bargain that was never reached.

The Superior Court should, therefore, reject this argument.

## V.     This Court properly charged the jury.

The Superior Court should reject defendant's objection to the jury charge because he waived it. Furthermore, it is without merit. Defense counsel asserts that defendant "is entitled to a new trial because the trial court erred in instructing the jury concerning the charge of criminal conspiracy for Possession with Intent to Deliver a Controlled Substance (PWID)[3] that the jury could convict defendant on this charge because co-defendant Richardson pled guilty to the charge of Conspiracy to PWID[4]." [Statement of Matters Complained of on Appeal, ¶ 4] This assertion mischaracterizes the jury charge.

---

[3] Richardson pled guilty to conspiracy to possess a gun, not conspiracy to distribute controlled substances.
[4] See preceding footnote.

13

This Court explained to the jurors that they could find—as a result of his pleading guilty to conspire[5] with defendant to possess a gun—that Richardson was defendant's "accomplice" and, therefore, his testimony was from a "corrupt or polluted source." [N.T. 7/19/13, p. 99-101] Defense counsel then raised some questions about the charge. [Id. at 118-124] He did not, however, make any formal objection to the charge. The jury then retired.

After some deliberations, the jury requested a more detailed explanation of Count 5 and the law concerning possession and control. [Id. at 126] This Court then re-instructed the jury on those issues, explaining that the parties could have "joint possession" of a firearm under certain scenarios, including if they possessed it as co-conspirators. [Id. at 127-130]

Defense counsel then objected to the use of the word "conspiracy" on the ground that defendant was never charged with conspiracy. He asked that the jury be told that Defendant "has not been charged with Conspiracy . . ." [Id. at 132] This Court obliged him and instructed the jury that "the Defendant has not been charged with Conspiracy . . ." [Id. at 133] Counsel made no further objections or exceptions.

The law provides that "[a]n appellate court must assess the jury instructions as a whole to determine whether they are fair and impartial." Commonwealth v. Collins, 687 A.2d 1112, 1113

---

[5] This Court explained:

> In view of the evidence of Mr. Richardson's criminal involvement, and I remind you that his testimony included the fact that **he pleaded guilty to conspiring with the Defendant to possess a firearm**, you must decide whether Mr. Richardson was an accomplice in the first place in the crime charged. If after considering all the evidence you find that he was an accomplice, then you must apply the special rules to his testimony. Otherwise, ignore those rules. Use this test to determine whether Mr. Richardson was an accomplice. Again, an accomplice is a person who is a person who knowingly and voluntarily cooperates with or aids another person in the commission of a crime.

[N.T. 7/19/13, p. 100-101 (emphasis added)]

14

(Pa. 1996). "The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. . . . We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision." *Commonwealth v. Hannibal*, 753 A.2d 1265, 1269 (Pa. 2000) (quoting *Commonwealth v. Prosdocimo*, 578 A.2d 1273, 1274, 1276 (Pa. 1990). "For [an] appellant to be entitled to a new trial, the jury instruction must have been fundamentally in error, or misled or confused the jury." *Commonwealth v. Wright*, 961 A.2d 119, 145 (Pa. 2008).

Defense counsel does not contend that the charge as given contained any legal error. Rather, he appears to suggest that it contained extraneous information. Assuming that we understand it correctly, the additional explanation or revision cured defense counsel's objection. He waived the issue by failing to object once again after this Court explained to the jury that the Commonwealth had not charged defendant with conspiracy. The Superior Court should, therefore, find that counsel waived the issue by failing to preserve it at trial. Under Criminal Procedural Rules 603 and 647(B), there must be a specific objection or exception to the charge. *Commonwealth v. Pressley*, 887 A.2d 220, 225 (Pa. 2005). This rule "serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue." *Id.* at 225. Even if the charge contained extraneous information, this Court properly corrected it. Defendant did not object to the correction, so he waived the issue.

Furthermore, the instruction, even before the requested clarification, was not in error. It correctly set forth the manner in which Williams and Richardson might have jointly possessed the gun. The Superior Court should, therefore, reject the argument.

## VI. There was sufficient evidence to support the convictions, and the verdict was not against the weight of the evidence.

The Superior Court should reject defendant's sufficiency challenge because there was ample evidence to support the convictions. Furthermore, the verdict was not against the weight of the evidence.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt. *Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000), citing *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. *Commonwealth v. Santana*, 333 A.2d 876 (Pa. 1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Chambers*, 599 A.2d 630 (Pa. 1991).

A motion for new trial on the ground that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Whiteman*, 485 A.2d 459 (Pa. Super. 1984). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is

16

against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Brown*, 648 A.2d 1177 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer, supra*. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Widmer, supra.* at 752.

When arrested, defendant had in his right sock 15 baggies containing a total amount of .7 grams of crack cocaine. There is no serious issue as to whether he possessed the drugs. The only issue is whether he did so with the intent to distribute them. If the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors, including: the manner in which the controlled substance was packaged, the behavior of the defendant, the presence or absence of drug paraphernalia, the presence of cash found in possession of the defendant, the presence of a gun, the location of the arrest, and expert testimony. *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237-1238 (Pa. 2007) "Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." *Commonwealth v. Jackson*, 645 A.2d 1366, 1368 (Pa. Super. 1994).

Defense counsel assails the expert testimony of Skahill as "incredible, unreliable and unsupported by independent evidence." [Statement of Matters Complained of on Appeal, ¶ 8] This Court holds that Skahill's opinions were competent, and a reasonable juror could rely upon

17

them and find defendant guilty. Skahill testified that defendant was not a serious crack cocaine user. He did not have a crack pipe or other smoking device in his possession or his car. He possessed a handgun, which is one of the tools of the drug-trafficking trade. These facts led him to the conclusion that defendant possessed the crack cocaine with the intent to distribute it. [N.T. 7/18/13, pp. 33-46]

Since being released from federal prison in August 2011 until being arrested for the instant offenses in September 2012, defendant was repeatedly and randomly subject to urine testing, but he never once tested positive for cocaine. [*Id.* at 115-136] Defendant's assertion that he was a "user" not a "dealer" of crack cocaine flies in the face of the drug test results. Although defendant's expert testified that he was a "user," it appears that the jury did not believe her. The finding that he possessed the crack cocaine with the intent to distribute it is reasonable and fully supported by the evidence.

There is also no question but that a gun was located under the passenger seat of the car. The only issue was whether defendant "possessed" it. Dereck Richardson testified that the gun belonged to defendant, who, after being pulled over, pulled it out of his waistband and attempted to put it in the glove compartment. The gun fell to the floor, and Richardson pushed it under the passenger seat with his foot. [N.T. 6/1713, pp. 110-132] Although Richardson testified pursuant to a plea agreement, the jury was certainly at liberty to believe his account.

There was sufficient evidence support the verdicts in this case. There were no facts that were so clearly of greater weight that to ignore them or to give them equal weight with all the facts would be a denial of justice. This Court properly denied the post-trial motions, and the Superior Court should affirm the verdicts.

18

## VII.  The sentences were proper.

The Superior Court should reject the challenge to the sentences because the aggregate sentence is not, on its face, manifestly excessive. The imposition of sentence is vested in the discretion of the trial court, and should not be disturbed on appeal for a mere error of judgment but only for an abuse of discretion and a showing that a sentence was manifestly unreasonable. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). Issues challenging the discretionary aspects of sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. "Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa. Super. 2004) (citation omitted), appeal denied 580 Pa. 695, 860 A.2d 122 (2004).

All of the sentences were well within the guideline ranges:

(1) Count One: The jury found defendant guilty of possession with the intent to deliver under 2.5 grams of cocaine. The law provides for a mandatory minimum sentence of 5 years (60 months). Defendant was sentenced to the mandatory minimum term of 5 years (60 months), so he received the lowest possible sentence.

(2) Count Two merged with Count One for sentencing purposes.

(3) Count Three: The jury found defendant guilty of possession of drug paraphernalia. The standard sentencing range is 3 – 6 months. This Court sentenced defendant to a 6-month period of incarceration, which is at the high end of the guidelines range, but still within the guidelines.

(5) Count Five: The jury found defendant guilty of possession of a firearm by an ineligible person. This Court sentenced defendant to the mandatory period of 60 - 120 months incarceration, the only available option.

19

(6) Count Six: The jury found defendant guilty of possession of an unlicensed firearm. This Court sentenced defendant to the mandatory period of 42 to 84 months incarceration, the only available option.

The only issue, then, is the propriety of imposing the sentences consecutively rather than concurrently. Defendant did not file a post-trial motion for reconsideration of sentence, so he has waived any challenge to the imposition of consecutive sentences.

Even if he did not waive the argument, it has no merit. The imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. Challenges to the exercise of this discretion ordinarily do not raise a substantial question. *Commonwealth v. Pass*, 914 A.2d 442, 446-47 (Pa. Super. 2006); *Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa. Super. 2005), *appeal denied*, 585 Pa. 687, 887 A.2d 1240 (2005) (*citing Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995). The sentencing statute, 42 Pa.C.S. § 9721, affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005) (citing *Commonwealth v. Graham*, 661 A.2d 1367, 1373 (Pa. 1995)). "In imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed." *Commonwealth v. Perry*, 883 A.2d 599 (Pa Super. 2005), *quoting Commonwealth v. Wright*, 832 A.2d 1104, 1107 (Pa.Super.2003); *see also Commonwealth v. L.N.*, 787 A.2d 1064, 1071 (Pa.Super.2001), *appeal denied* 569 Pa. 680, 800 A.2d 931 (2002). As the Superior Court stated in *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa.Super. 2010), "[t]hus, in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence

20

to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case."

The aggregate sentence—168 to 336 months or 14 to 28 years—is not, on its face, manifestly excessive. Four factors must be considered when fashioning an appropriate sentence: punishment, rehabilitation, the safety of the community and deterrence.

Punishment. Drug trafficking is a very serious offense that strikes at the heart of civilized society. The offense of possession with intent to distribute is serious, and defendant should be punished. Possession of an unlicensed gun by a felon is a serious offense. Defendant must be punished for his callous disregard of public safety.

Rehabilitation. The difficulty with rehabilitation is that defendant has shown little interest in it. At the sentencing hearing, defendant testified that he was gainfully employed, had finished a course in truck driving and was looking forward to starting a new career. [N.T. 9/16/13, p. 7] However, only one year after being released from his federal bank robbery sentence, defendant was arrested for the instant offenses. Defendant may have skills and the ability to be gainfully employed, but he supplements those earnings with illegal drug sales. He has little interest in giving up his felonious pursuits, despite his ability to make an honest living. Therefore, this Court cannot consider the prospect for rehabilitation by teaching him new skills. Defendant has plenty of skills, but he has chosen to engage in criminal pursuits.

The sentencing court is in the best position to judge the "defendant's character, [and his] displays of remorse, defiance or indifference." *Commonwealth v. Eicher*, 605 A.2d 337, 354 (Pa. Super.), appeal denied, 533 Pa. 598, 617 A.2d 1272 (1992). It is recommended that the Superior Court defer to this Court's assessment of defendant's character and his defiant insistence on engaging in crime.

21

The safety of the community. As previously noted, defendant imperiled the safety of the City of Chester by his drug trafficking. [See discussion at N.T. 9/16/13, p. 23-24] The community's safety is enhanced each time a drug dealer, particularly one who is illegally armed, is taken off its streets. This Court believes that defendant should be removed from the streets for an extended period. Were he to be released in the near future, he would, in short order, resume his threats to the community's safety.

Deterrence. A long sentence is appropriate to deter this defendant and others so inclined from engaging in these activities. If this Court were to impose a lenient sentence, the message would go out to the members of the drug-dealing community that they can continue to ply their trade with impunity. The courts must send to drug dealers the message that the potential consequences of their activities are momentous. If a drug dealer puts the safety of the public at risk, he is likely to spend a significant amount of time behind bars.

The Superior Court should, therefore, affirm the sentence of this Court.

## CONCLUSION

The Superior Court should, therefore, affirm the convictions and the sentence of this Court.

_____  2-21-14

**MICHAEL F. X. COLL,        S. J.**

22